IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NOBLE EAGLE CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff Noble Eagle Corporation ("Noble" or "Plaintiff"), for itself and on behalf of the affiliated group of corporations for which it serves as the agent, files this Complaint for the recovery of federal internal-revenue tax paid and collected by the United States of America ("Defendant" or sometimes "IRS"), plus interest thereon according to law, and says:

## SUMMARY OF ACTION

1. This is an action for the recovery of $27,112,480.00 in federal income taxes, plus interest thereon according to law, erroneously and illegally assessed and collected by the Internal Revenue Service ("IRS") due to its failure to credit foreign income taxes paid by Noble for the 2009 tax year against its U.S. income tax liability for that year.

2. The federal tax law allows U.S. taxpayers to credit foreign income taxes paid or accrued against their U.S. income tax liability. On its original 2009 U.S. income tax return, Noble claimed foreign tax credits against its U.S. income tax liability for foreign taxes paid, but did not claim the foreign tax credits at issue in this action.

3. Subsequent to both Noble's timely filing of its original 2009 U.S. income tax return and the IRS's examination of that return, Noble determined that it inadvertently underreported the amount of foreign tax credits for 2009 that it was entitled to by $27,112,480.00 ("Unclaimed

Foreign Tax Credits"). Noble amended its 2009 U.S. income tax return to claim the Unclaimed Foreign Tax Credits, resulting in an overpayment of Noble's 2009 tax liability. The IRS illegally refused to grant Noble's refund claim with respect to the Unclaimed Foreign Tax Credits, which necessitates this lawsuit.

4. This Complaint divides the Unclaimed Foreign Tax Credits into two categories: (1) Mexican income taxes paid on the distribution of profits by certain Noble Mexican affiliates ("Noble Mexican Distribution Tax"), and (2) income taxes paid in foreign taxing jurisdictions through foreign affiliates that Noble underreported on its original 2009 income tax return ("Underreported Foreign Taxes").

## JURISDICTION AND VENUE

5. Jurisdiction exists under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422. Venue is proper in this district under 28 U.S.C. § 1402(a).

## PARTIES

6. Noble is owned by Noble Corporation plc, which owns and operates one of the most modern, versatile and technically advanced fleets in the offshore drilling industry.

7. Noble is a Delaware corporation having its principal place of business and principal office in Sugar Land, Texas. Noble's mailing address is 13135 South Dairy Ashford, Suite 800, Sugar Land, Texas 77478.

8. Noble Holding (U.S.) Corporation was a Delaware corporation and the common parent of an affiliated group of corporations ("Noble Group") within the meaning of 26 U.S.C. § 1504(a) during the taxable year beginning January 1, 2009 and ending December 31, 2009 ("2009"). The Noble Group timely filed a Form 1120, U.S. Corporation Income Tax Return, for 2009 ("Noble 2009 Form 1120"). The income tax liability reported on the Noble 2009 Form 1120

has been fully satisfied. The IRS previously examined the Noble 2009 Form 1120 and "made no changes to [Noble's] reported tax."

9. The Noble Group operates in a number of foreign taxing jurisdictions through foreign affiliates (collectively, "Noble Foreign Affiliates" and individually, "Noble Foreign Affiliate").

10. The Noble Foreign Affiliates, where required, filed income tax returns with, and paid the appropriate amount of income taxes due to, the relevant foreign taxing jurisdiction or jurisdictions (collectively, "Foreign Income Tax Returns" and individually, "Foreign Income Tax Return").

11. As a result of an internal reorganization completed in January of 2017, Noble became the common parent of the Noble Group. Noble files this action for itself, Noble Holding (U.S.) LLC, and all those entities which are or were members of the Noble Group (including, but not limited to, Noble Holding (U.S.) Corporation), and all such members join in filing this action.

12. Defendant is the United States of America. All action or inaction by Defendant relating to the subject matter of this action has been in full or part through Defendant's agents and employees in the IRS. Service of process is being made on Defendant through the Attorney General at the U.S. Department of Justice, upon the U.S. Attorney for the Southern District of Texas, and upon such other officers or individuals as may be required.

## FACTUAL BACKGROUND

### The Noble Mexican Distribution Tax

13. Dating back to at least 2002, the Noble Group provided services in Mexico to Petroleos Mexicanos ("PEMEX"), a petroleum company that is wholly owned by the Mexican government.

14. The primary services provided by the Noble Group to PEMEX were the leasing of marine drilling rigs, including providing related services such as repair, maintenance, and mobilizing the rigs.

15. The Noble Group provided these services to PEMEX through certain Noble Foreign Affiliates located in Mexico during 2009 that were permanent establishments or branches of the Noble Group. The relevant Noble Foreign Affiliates are Noble Earl Frederickson, Noble Leonard Jones, Noble Bill Jennings, and Noble Asset Mexico (collectively referred to as the "Noble Mexican Affiliates").

16. During 2009, Noble completed an internal restructuring to align worldwide rig ownership, operation, and management with Noble's growth and presence in international markets ("WAC Partnership"). As part of the formation of the WAC Partnership, the ownership of the Noble Mexican Affiliates and related drilling rigs was transferred to a Noble Foreign Affiliate.

17. Noble engaged local Mexican tax and legal advisors ("Mexican Tax Advisors") to advise with respect to the Mexican income tax and legal consequences of these transfers. The Mexican Tax Advisors determined that the transfers would be subject to a Mexican income tax that is imposed on the distribution of profits made by a Mexican branch that are in excess of the branch's previously taxed Mexican income ("CUFIN"), adjusted for inflation ("Mexican Distribution Tax"). The Mexican Distribution Tax is calculated on the previously untaxed earnings and profits of the Noble Mexican Affiliates as calculated under U.S. tax accounting rules.

18. The Mexican Distribution Tax is an income tax for U.S. tax purposes and eligible for a foreign tax credit under the Mexico Tax Treaty (defined below), including, but not limited to, Article 24 of the Mexico Tax Treaty, and domestic U.S. tax law.

19. On September 18, 1992, the United States and Mexico signed the Convention Between the Government of the United States of America and the Government of the United Mexican States for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on Income, together with a Related Protocol ("Mexico Tax Treaty").  The Mexico Tax Treaty was in force during Noble's 2009 tax year.  Article 24(1) of the Mexico Tax Treaty expressly provides that "any profits tax imposed on distributions" shall be treated as income taxes so long as the tax is calculated on the distributee's previously untaxed earnings and profits as calculated under U.S. tax accounting rules.  The United States Treasury Department Technical Explanation of the Mexico Tax Treaty states that the Mexican Distribution Tax "shall be treated as income taxes, and therefore eligible for the credit . . . to the extent that it is imposed on previously untaxed earnings and profits as calculated under U.S. tax accounting rules."

20. The Mexican Tax Advisors preliminarily determined that the amount of the Mexican Distribution Tax that would be owed by the Noble Mexican Affiliates for 2009 was $58,505,748.[1]

21. However, the Mexican Tax Advisors also determined that the amount of the Mexican Distribution Tax owed by the Noble Mexican Affiliates could be reduced through a series of internal transactions.  Specifically, the Noble Mexican Affiliates resolved a number of the outstanding intercompany payables and receivables among the Noble Mexican Affiliates by (1) first offsetting receivables and payables owed between the same Noble Mexican Affiliates, and (2) then offsetting receivables and payables between different Noble Mexican Affiliates.

---

[1] The amounts of the Noble Mexican Distribution Tax and other Mexican income tax amounts discussed herein, all of which were paid and denominated in Mexican pesos, have been converted into United States Dollars as of September 30, 2009, using an exchange rate of .0752.

22. After the internal transactions were completed, the Mexican Tax Advisors determined that the total amount of the Mexican Distribution Tax owed by the Noble Mexican Affiliates was $28,973,796 ("Noble Mexican Distribution Tax").

23. The table below sets forth for each of the Noble Mexican Affiliates the (1) amounts of the Mexican Distribution Tax that would have been owed before the internal transactions, (2) amounts of the Mexican Distribution Tax reductions (or increases) achieved as a result of the internal transactions, and (3) amounts of the Mexican Distribution Tax paid to the Mexican Tax Authority:

| Noble Mexican Affiliate | Estimated Mexican Distribution Tax Before Internal Transactions | Mexican Distribution Tax Reductions (or Increases) Resulting from Internal Transactions | Mexican Distribution Tax Actually Paid |
|---|---|---|---|
| Noble Earl Frederickson | $11,809,731 | $5,741,979 | $6,067,752 |
| Noble Leonard Jones | $11,575,620 | ($68,791) | $11,644,411 |
| Noble Bill Jennings | $12,762,415 | $1,500,782 | $11,261,633 |
| Noble Asset Mexico | $22,357,982 | $22,357,982 | 0 |
| **TOTAL** | **$58,505,748** | **$29,531,952** | **$28,973,796** |

24. Noble Bill Jennings paid its Mexican Distribution Tax on or about October 10, 2009, and Noble Earl Frederickson and Noble Leonard Jones each paid its Mexican Distribution Tax on or about October 19, 2009. All three Noble Mexican Affiliates reported the Mexican Distribution Tax paid to the Mexican Tax Authority on their respective income tax returns filed with the Mexican Tax Authority for 2009.

25. The Noble Mexican Distribution Tax was required to be paid for 2009 under Mexican income tax law at the time of the distribution regardless of whether the Noble Mexican Affiliates had any other current year Mexican income tax liabilities or future offset opportunities. The payment of the Noble Mexican Distribution was a compulsory payment of tax, not a deposit or voluntary prepayment of Mexican income taxes.

26. Noble incurred and paid the Noble Mexican Distribution Tax in the 2009 tax year, and U.S. foreign tax credits for the Noble Mexican Distribution Tax are therefore appropriately claimed in Noble's 2009 tax year.

27. The Noble Mexican Distribution Tax was (1) a compulsory payment, (2) determined in a manner that was consistent with a reasonable interpretation and application of substantive and procedural provisions of Mexican income tax law, and (3) determined in such a way to as to reduce, over time, the Noble Group's reasonably expected liability for income taxes under Mexican law. Noble fulfilled all the prerequisites under the Internal Revenue Code and applicable Treasury Regulations for claiming U.S. foreign tax credits for the Mexican Distribution Tax payments.

**Noble Reduced Its Future Mexican Income Tax Liabilities**

28. At the time that the Noble Mexican Distribution Tax was paid, Mexican income tax law allowed each of the Noble Mexican Affiliates to offset the amount of Noble Mexican Distribution Tax paid by it against (1) the final balance of other Mexican income taxes owed by such Noble Mexican Affiliate for 2009, and (2) the Mexican income taxes owed by such Noble Mexican Affiliate for the following two taxable years, which was 2010 and 2011 for the Noble Mexican Affiliates. The Noble Mexican Distribution Tax could not otherwise be refunded, credited, rebated, abated, or forgiven.

29. The Noble Mexican Affiliates used $4,899,095 of the Noble Mexican Distribution Tax to offset other Mexican income taxes owed by the Noble Mexican Affiliates for 2009. The Noble Mexican Affiliates were not able to utilize $24,074,701 of the Noble Mexican Distribution Tax paid to offset other Mexican income taxes owed by the Noble Mexican Affiliates for 2009 ("Remaining Noble Mexican Distribution Tax"). The amount of the Noble Mexican Distribution Tax used by each of the Noble Mexican Affiliates to offset other Mexican income taxes owed by it for 2009, and the Remaining Noble Mexican Distribution Tax, was as follows:

| Noble Mexican Affiliate | Noble Mexican Distribution Tax | Noble Mexican Distribution Tax Used In 2009 To Offset Other Mexican Income Taxes Owed For 2009 | Remaining Noble Mexican Distribution Tax After 2009 |
|---|---|---|---|
| Noble Earl Frederickson | $6,067,752 | $180,815 | $5,886,937 |
| Noble Leonard Jones | $11,644,411 | $3,367,166 | $8,277,245 |
| Noble Bill Jennings | $11,261,633 | $1,351,114 | $9,910,519 |
| **TOTAL** | **$28,973,796** | **$4,899,095** | **$24,074,701** |

30. The Noble Group claimed a U.S. foreign tax credit for the $4,899,095 on the Noble 2009 Form 1120 for the Noble Mexican Distribution Tax paid to offset other Mexican income taxes owed by the Noble Mexican Affiliates for 2009. The Noble Group did not claim a U.S. foreign tax credit for the Remaining Noble Mexican Distribution Tax on the Noble 2009 Form 1120.

31. During 2010, 2011, and 2012, the Mexican income tax law required the Noble Mexican Affiliates to make monthly income tax payments, including amounts required under the impuesto empresarial a tasa unica ("IETU") regime, which is a single rate business tax adopted by Mexico ("Required Mexican Income Tax Payments"). The Mexican Tax Advisors calculated the

amounts of the Required Mexican Income Tax Payments in accordance with Mexican income tax law. Mexican taxpayers who failed to pay the proper amounts of their Required Mexican Income Tax Payments were subject to penalties and interest charges.

32. The Noble Mexican Affiliates were required under Mexican income tax law to pay the full amounts of the Required Mexican Income Tax Payments notwithstanding the potential availability of the Remaining Noble Mexican Distribution Tax to offset other required Mexican income tax payments. For example, under Mexican income tax law, the payments required under the IETU regime were required to be used to offset the Mexican income tax liabilities of the Noble Mexican Affiliates before the Remaining Noble Mexican Distribution Tax could be used. In other words, Mexican income tax law did not permit the Noble Mexican Affiliates to use the Remaining Noble Mexican Distribution Tax to reduce the amounts of the payments required under the IETU regime.[2]

33. During 2011, the Noble Group and the Mexican Tax Advisors determined that the Noble Mexican Affiliates would not be able to utilize the Remaining Noble Mexican Distribution Tax by the end of 2011. Therefore, in an effort to reduce the Noble Group's reasonably expected future payments of Mexican income taxes, the Noble Mexican Affiliates filed amended income tax returns with the Mexican Tax Authority that sought to recharacterize the Noble Mexican Distribution Tax into another form of Mexican tax credit that could be used to offset other Mexican tax liabilities of the Noble Mexican Affiliates for up to five years ("Recharacterization").

34. Although the Recharacterization did not reduce the amount of the Noble Mexican Distribution Tax owed at the time it was calculated during 2009, the Recharacterization was advantageous because it increased both the (1) period of time in which the Remaining Noble

---

[2] The IETU is an income tax that is eligible for a foreign tax credit. *See* IRS Notice 2008-3, 2008-1 C.B. 253 (Dec. 10, 2007).

Mexican Distribution Tax could be utilized to offset other Mexican taxes owed by the Noble Mexican Affiliates from two years to five years, and (2) scope of taxes that could be offset by the Remaining Noble Mexican Distribution Tax. Noble and the Mexican Tax Advisors determined that the Recharacterization provided the best opportunity to utilize the Remaining Noble Mexican Distribution Tax, which would reduce the Noble Group's reasonably expected liability for income taxes under Mexican law.

35. As of the date of filing this action, the Mexican Tax Authority has allowed the Noble Mexican Affiliates a portion of the Mexican income tax benefit resulting from the Recharacterization. The Mexican Tax Authority audited the amended income tax returns filed by the Noble Mexican Affiliates reporting the Recharacterization, and assessed additional income taxes, interest, and penalties totaling approximately $4,700,000 against Noble Earl Frederickson and Noble Bill Jennings ("Recharacterization Assessments").[3] However, as discussed below, even if the Noble Mexican Affiliates' challenges to the Recharacterization Assessments are not successful, the Recharacterization still results in a net reduction of the Noble Mexican Affiliates' liability for income taxes under Mexican law by approximately $10,595,174.

36. The Recharacterization allowed the Noble Mexican Affiliates to successfully utilize a portion of the Remaining Noble Mexican Distribution Tax as offsets against other Mexican tax liabilities. The amounts of the Remaining Noble Mexican Distribution Tax utilized as offsets against other Mexican tax liabilities because of the Recharacterization, and the amounts of the Remaining Noble Mexican Distribution Tax that could not be utilized as offsets despite the

---

[3] Noble and the Noble Mexican Affiliates disagree with the determinations of the Mexican Tax Authority, and are challenging the Recharacterization Assessments in Mexico. The refund sought in this action does not include any amounts for the Recharacterization Assessments.

best efforts of the Noble Mexican Affiliates ("Unclaimed Noble Mexican Distribution Tax"), were as follows:

| Noble Mexican Affiliate | Remaining Noble Mexican Distribution Tax After 2009 | Remaining Noble Mexican Distribution Tax Utilized As Offsets After Recharacterization | Unclaimed Noble Mexican Distribution Tax |
|---|---|---|---|
| Noble Earl Frederickson | $5,886,937 | $2,276,195 | $3,610,742 |
| Noble Leonard Jones | $8,277,245 | $8,277,245 | 0 |
| Noble Bill Jennings | $9,910,519 | $4,741,734 | $5,168,785 |
| **TOTAL** | **$24,074,701** | **$15,295,174** | **$8,779,527** |

37.    As set forth in the table above, the Recharacterization allowed the Noble Mexican Affiliates to utilize $15,295,174 of the Remaining Noble Mexican Distribution Tax as offsets against other Mexican tax liabilities for tax years after 2009 that the Noble Mexican Affiliates would not have been able to utilize absent the Recharacterization. Absent the Recharacterization, the Noble Mexican Affiliates would have incurred additional Mexican income tax liabilities and been required to make additional payments of Mexican income tax.

38.    Moreover, even if the Recharacterization Assessments are ultimately sustained by the Mexican courts, the Recharacterization still results in a reduction of the Noble Mexican Affiliates' liability for taxes under Mexican law by approximately $10,595,174 ($15,295,174 - $4,700,000).[4]

---

[4] Noble timely filed a protective claim with the IRS with respect to the Recharacterization Assessments. The amounts of the refunds and/or additional foreign tax credits for 2009 and other tax years that will be requested by the Noble Group are contingent upon the resolutions of the Recharacterization Assessments. Noble will file an additional refund claim that amends that protective claim to account for any additional foreign tax credits that may result from the Recharacterization Assessments.

39. Noble is therefore entitled to an additional $24,074,701 in U.S. foreign tax credits for the 2009 tax year arising from the Remaining Noble Mexican Distribution Tax, with collateral adjustments (including correlative allocations, conforming adjustments, and other setoffs) to later tax years. The Noble Group will work with the IRS on the computation of any appropriate adjustments after the resolution of this action. In the alternative, Noble is entitled to an additional amount of at least $8,779,527 in U.S. foreign tax credits for the 2009 tax year arising from the Unclaimed Noble Mexican Distribution Tax.

**Underreported Foreign Taxes**

40. As part of the formation of the WAC Partnership, one of the members of the Noble Group became a limited partner in the WAC Partnership on October 1, 2009. As a limited partner in the WAC Partnership, the Noble Group was allocated 13.1763% of the WAC Partnership's foreign income taxes starting on October 1, 2009 and ending on December 31, 2009.

41. On the Noble 2009 Form 1120, the Noble Group claimed foreign tax credits for certain foreign income taxes incurred and paid by the Noble Group in various foreign jurisdictions from January 1, 2009 to September 30, 2009, and 13.1763% of the WAC Partnership's foreign income taxes from October 1, 2009, to December 31, 2009. The foreign tax credits claimed on the Noble 2009 Form 1120 did not include any claim for foreign tax credits for the Underreported Foreign Taxes.

42. After filing the Noble 2009 Form 1120, the Noble Group determined that it understated the amount of foreign tax credits that should have been reported on the Noble 2009 Form 1120 by $3,037,779 (not including the Remaining Noble Mexican Distribution Tax discussed above).

43. The name of each Noble Foreign Affiliate, amount of foreign tax credits claimed on the Noble 2009 Form 1120, amount of foreign tax credits that should have been claimed on the

Noble 2009 Form 1120 (not including the Remaining Noble Mexican Distribution Tax), and the differences between the amounts claimed on the Noble 2009 Form 1120 and in this action (the Underreported Foreign Taxes) are summarized in the table below:

| Noble Foreign Affiliate | Foreign Tax Credits Claimed On Noble 2009 Form 1120 | Corrected Amount Of Foreign Tax Credits | Difference |
|---|---:|---:|---:|
| Noble Drilling Company India | $1,177,657 | $1,200,519 | $22,862 |
| Noble (Middle East) Limited (India) | $445,490 | $1,775,424 | $1,329,934 |
| Noble International Limited - Qatar | ($471,746) | $25,564 | $497,310 |
| Noble Drilling Holding LLC - Qatar | $0 | $108,045 | $108,045 |
| Noble Drilling (TVL) Limited (Qatar) | $0 | $62,675 | $62,675 |
| Noble Asset (U.K.) Ltd. | $313,570 | $38,276 | ($275,294) |
| Noble Drilling (N.S.) Ltd. (U.K.) | $133,121 | $16,960 | ($116,161) |
| Noble Drilling (Land Support) Ltd. | ($296,823) | $0 | $296,823 |
| Noble Drilling (Nederland) B.V. | $4,269 | $0 | ($4,269) |
| Noble Neddrill International Ltd. (Netherlands) | $73,780 | $42,505 | ($31,275) |
| Noble North Africa Limited (Libya) | $602,845 | $136,322 | ($466,523) |
| Noble Enterprise Limited (Denmark) | $15,899 | $5,450 | ($10,449) |
| Noble Drilling (Denmark) Aps | $13,978 | $45,677 | $31,699 |
| Noble International Limited - Nigeria | $346,214 | $300,648 | ($45,566) |
| Noble Drilling (Nigeria) Ltd. | $26,408 | $0 | ($26,408) |
| Noble Drilling (Canada) Ltd. | $321,308 | $321,308 | 0 |
| Noble Drilling (Canada) Ltd. | $2,052,483 | $2,052,483 | 0 |
| Noble Contracting S.a.r.l. Gmbh (Switzerland) | $0 | $5,339 | $5,339 |
| Noble Leasing II (Swiss) GmbH | $0 | $22,468 | $22,468 |
| Noble Leasing III (Swiss) GmbH | $279,691 | $2,071 | ($277,620) |
| Noble Asset Mexico LLC (Mexico) | $17,950,913 | $17,229,872 | ($721,041) |
| Noble Bill Jennings LLC (Mexico) | $8,273,350 | $9,168,338 | $894,988 |
| Noble Carl Norberg S.a.r.l. (Mexico) | $2,087,533 | $2,800,729 | $713,196 |
| Noble Contracting GmbH (Mexico) | $234,818 | $638,759 | $403,941 |
| Noble Drilling International Services Pte. Ltd. (Mexico) | $450 | $0 | ($450) |
| Noble Drilling Leasing LLC (Mexico) | $19,426,694 | $19,912,595 | $485,901 |
| Noble Earl Frederickson LLC (Mexico) | $6,253,793 | $5,754,105 | ($499,688) |
| Noble Holding Europe S.a.r.l. | $225,904 | $170,947 | ($54,957) |
| Noble Leasing II Gmbh (Mexico) | $342,555 | $198,269 | ($144,286) |
| Noble Leonard Jones LLC (Mexico) | $10,691,458 | $11,527,856 | $836,398 |
| Noble Mexico Limited (Mexico) | $221,108 | $236,605 | $15,497 |
| Noble do Brasil Ltda | $120,683 | $105,373 | ($15,310) |
| **TOTAL** | **$70,867,403** | **$73,905,182** | **$3,037,779** |

44. The Underreported Foreign Taxes were (1) compulsory payments, (2) determined in a manner that was consistent with a reasonable interpretation and application of substantive and procedural provisions of foreign income tax law, and (3) determined in such a way to as to reduce, over time, the Noble Group's reasonably expected liability for income taxes under foreign law. Noble fulfilled all the prerequisites under the Internal Revenue Code and applicable Treasury Regulations for claiming U.S. foreign tax credits for the Underreported Foreign Taxes payments.

45. Noble is therefore entitled to an additional $3,037,799 in U.S. foreign tax credits for the 2009 tax year for the Underreported Foreign Taxes.

## COUNT I – CLAIM FOR REFUND

46. Plaintiff incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth in this section.

47. The Noble Group maintains its books and records and files its U.S. federal income tax returns on a calendar-year basis using the accrual method of accounting.

48. The Noble Group timely filed the Noble 2009 Form 1120. As stated above, the income tax liability reported on the Noble 2009 Form 1120 has been fully satisfied and the IRS previously examined the Noble 2009 Form 1120 and "made no changes to [Noble's] reported tax."

49. Instead of claiming the Remaining Noble Mexican Distribution Tax as foreign tax credits on the Noble 2009 Form 1120, the Noble Group incorrectly claimed foreign tax credits for a portion of the Remaining Noble Mexican Distribution Tax on its subsequent Forms 1120, U.S. Corporation Income Tax Returns, as the Remaining Noble Mexican Distribution Tax was utilized as offsets against other Mexican income tax liabilities. This resulted in the Noble Group claiming less foreign tax credits than it was legally entitled to for the Noble Mexican Distribution Tax in 2009 because (1) the Remaining Noble Mexican Distribution Tax was not claimed as foreign tax credits in 2009, (2) as a limited partner in the WAC Partnership, the Noble Group claimed only its

allocated portion of the Remaining Noble Mexican Distribution Tax as foreign tax credits for tax years after 2009 as the Remaining Noble Mexican Distribution Tax was utilized as offsets against other Mexican income tax liabilities, and (3) the Unclaimed Noble Mexican Distribution Tax was never claimed as foreign tax credits.

50. In fact, however, the entire Noble Mexican Distribution Tax is a creditable foreign income tax for the 2009 tax year. Therefore, the Noble Group is correctly entitled to additional foreign tax credits for its 2009 tax year in at least the amount of $24,074,701 with respect to the Noble Mexican Distribution Tax.

51. Further, Noble incorrectly failed to claim any foreign tax credits with respect to the Underreported Foreign Taxes on its original 2009 Form 1120. The Noble Group is therefore also correctly entitled to additional foreign tax credits in at least the amount of $3,037,779 for its 2009 tax year with respect to the Underreported Foreign Taxes.

52. On March 13, 2020, Noble timely filed a Form 1120X, Amended U.S. Corporation Income Tax Return, with Defendant amending Noble's original return for 2009 and claiming a refund of at least $27,112,480, plus interest thereon according to law, for the Unclaimed Foreign Tax Credits ("Claim for Refund"). The Claim for Refund stated the grounds for recovery included in this Complaint.

53. Defendant has not mailed Noble any notice of disallowance of the Claim for Refund, or any part thereof, and Noble has not waived any such notice. As of the date of filing this action, more than six months have passed from the date of filing the Claim for Refund. Consequently, Defendant has, by its inaction and without explanation, wrongly refused to allow the Claim for Refund.

54. By virtue of Defendant's conduct in refusing to allow the Claim for Refund, Defendant became and is now indebted to Plaintiff in the aggregate amount of at least $27,112,480.00, plus interest thereon according to law.

55. Noble is and at all relevant times has been the sole owner of this timely claim for refund and has made no transfer or assignment of such claim. No action on the Claim for Refund has been taken by the Congress of the United States or any other department of the Defendant, other than the actions described above. No suit or other process by Noble is pending on the Claim for Refund in any other court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that citation be issued and served as provided by law, for judgment for Plaintiff against Defendant in the amount of at least $27,112,480.00, plus interest thereon according to law; for court costs, witness fees, and attorneys' fees; and for such other relief to which Plaintiff may be entitled.

Dated: December 1, 2020

Respectfully submitted,

OF COUNSEL:

Robert J. Kovacev
Pro Hac Vice motion forthcoming
California State Bar No. 190286
Norton Rose Fulbright US LLP
799 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: (202) 662-6462
Fax: (202) 662-4643
rob.kovacev@nortonrosefulbright.com

Stephen A. Kuntz
State Bar No. 11762960
Federal I.D. No. 4270
Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246
stephen.kuntz@nortonrosefulbright.com

/s/ Robert C. Morris
Robert C. Morris
State Bar No.  24046484
Federal I.D. No. 638778
robert.morris@nortonrosefulbright.com
Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:     (713) 651-8404
Facsimile:     (713) 651-5246

Attorney-in-Charge for Plaintiff Noble Eagle Corporation